*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

JENNIFER FAE KINCAID,

       Defendant-Appellant.

UNPUBLISHED
August 12, 2026
9:40 AM

No. 371603
Shiawassee Circuit Court
LC No. 2023-007571-FC

Before: GADOLA, C.J., and RIORDAN and SWARTZLE, JJ.

PER CURIAM.

As a result of the death of her one-year-old son, defendant was convicted of involuntary manslaughter and possession of methamphetamine. She now appeals her convictions and sentence, arguing that involuntary statements made to police were improperly admitted at trial, that prosecutorial misconduct occurred during closing arguments, and that her sentence was disproportionate. Because we find no reversible errors with her convictions and sentence, we affirm.

## I. BACKGROUND

Defendant's son died from acute fentanyl toxicity. Even though defendant's mother had custody of the children through court order, the victim and his twin sister lived with defendant and the father of the children, defendant's boyfriend. The night before the victim's death, defendant's boyfriend and his friend were in a room of the house using heroin and methamphetamine. The friend saw defendant take heroin from her boyfriend and leave the room.

The next morning, emergency services were called to the house to find the victim dead. Defendant initially told police at the scene that she arrived at the house around 10:00 a.m. and discovered the victim face down on the couch and unconscious around 30 minutes to an hour after she arrived. Later that day, around 5:00 or 6:00 p.m., defendant was interviewed by police in the front passenger seat of an unmarked car; she was not given any warnings under *Miranda v Arizona*, 384 US 436, 467; 86 S Ct 1602; 16 L Ed 2d 694 (1966). During this interview, defendant told police that she did not live in the house and that the twins lived at her mother's home. At one point, she told police that she saw the twins the day before at the house where the victim died but

-1-

later stated that she only saw the twins at her mother's home the day before. When the police officer told defendant that drugs were found in the house, defendant admitted to smoking methamphetamine and snorting heroin the day before, as well as flushing and stashing drugs when she knew the police would be coming to the house.

Two months after the victim's death, defendant gave a second interview to police, during which she admitted to living with the boyfriend and the twins at the house, doing drugs with the boyfriend the night before the death, and leaving the house while the victim was asleep on the couch. She also admitted to moving drugs in the house before the police's arrival. Over a year and a half later, defendant gave a third interview to police, when she denied stashing the drugs, claimed that the drugs in the house did not belong to her, and asserted that she never used drugs in the living room where the victim died.

Defendant was charged for the victim's death and possession of drugs. Before trial, defendant moved to suppress the initial statements she made to the police in the unmarked vehicle, focusing on the line of questioning (about drugs), the location of the questioning (the police car), and the duration of the questioning (thirty minutes). The trial court denied the motion, recognizing that defendant was in a stressful situation but finding that defendant's statements were the product of a free and unconstrained choice during a noncustodial interrogation. The trial court acknowledged that the only evidence before it was the preliminary examination transcript; the police officer testified during that examination that he told defendant that she was free to leave, despite such statement not being recorded and transcribed; and defendant did not provide an affidavit to the contrary until she moved for reconsideration.[1]

Similarly, the trial court did not find any support in the record, in the transcript or otherwise, that defendant was sleep-deprived, under the influence of drugs during the interview, or impacted by a pending child protective services case. Defendant applied for leave to appeal the trial court's denial of the motion to this Court, which was denied for failure to persuade the Court of the need for immediate appellate review. *People v Kincaid*, unpublished order of the Court of Appeals, entered January 24, 2024 (Docket No. 367986). Defendant did not subsequently move to suppress or otherwise object to the prosecutor's use of the first interview at trial.

At trial, defendant's interviews with police were admitted through testimony, transcripts, and recordings, and defendant testified in her own defense. During closing arguments, the prosecutor made the following statement: "[Defendant] had 787 days to come up with her story,

---

[1] A transcript of the first interview was not provided by either party at the motion to suppress stage. A transcript was, however, introduced as an exhibit at trial, and the police officer testified about portions of the first interview transcript at trial. A recording of the first interview was played for the jury.

As an aside, the first-interview transcript provided in the record on appeal does appear to begin in the middle of a conversation, as the first line is defendant answering, "I understand," to an unknown question.

787 days to concoct and fabricate her story." Defense counsel did not object to the prosecutor's statement.

The jury found defendant guilty of involuntary manslaughter, MCL 750.321, and possession of methamphetamine, MCL 333.7403(2)(b)(*i*). After calculating a guidelines sentence range of 50 to 150 months, the trial court sentenced defendant to concurrent terms of 150 to 360 months and 34 to 240 months, respectively, justified in part because defendant was found with methamphetamine and heroin two months after the victim's death.

Defendant now appeals her convictions and sentence.

II. ANALYSIS

A. INVOLUNTARY STATEMENTS

On appeal, defendant argues that her statements given during the interview in the police car were involuntary and therefore improperly admitted at trial. In a review of the trial court's decision on a motion to suppress, the Court reviews for clear error the trial court's factual findings and reviews de novo the trial court's ultimate decision on the motion. *People v Joly*, 336 Mich App 388, 395; 970 NW2d 426 (2021). "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Johnson*, 466 Mich 491, 497-498; 647 NW2d 480 (2002).

The United States and Michigan Constitutions protect criminal defendants from self-incrimination, US Const, Am V; Const 1963, art 1, § 17, and this protection extends to in-custody interrogations, *Miranda*, 384 US at 467. If a suspect is in custody, then she must be given warnings that apprise her of the privilege against self-incrimination before police may interrogate her. *Miranda*, 384 US at 436-437. If no warnings are given and the suspect is in custody, "no evidence obtained as a result of interrogation can be used against [her]." *Id.* at 479. A suspect is in custody if she "reasonably could have believed that [she] was not free to leave," *People v Mayes*, 202 Mich App 181, 190; 508 NW2d 161 (1993), and the "environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*," *People v Elliott*, 494 Mich 292, 307; 833 NW2d 284 (2013). The Court considers the questioning's location, duration, and outcome, the statements made, and the restraints used, if any, in determining whether *Miranda* warnings were required. *Howes v Fields*, 565 US 499, 509; 132 S Ct 1181; 182 L Ed 2d 17 (2012).

Here, defendant was not in custody. In fact, defendant was not in restraints and was in the front passenger seat of the police vehicle. The vehicle was unmarked, and there was no indication in the record that she was unable to stop the questioning and leave the vehicle. Although it was later disputed, at the time the trial court denied her motion, the police officer had clearly testified during the preliminary examination that he told defendant that she was free to leave at any time.

In addition, defendant's statements were not "involuntary statement[s] elicited by coercive state action," such that they were "not the product of a rational intellect and a free will." *People v Stewart*, 512 Mich 472, 480; 999 NW2d 717 (2023). Examining the various factors set forth in *People v Cipriano*, 431 Mich 315, 334; 429 NW2d 781 (1988), such as the age and state of defendant at the time of questioning, defendant failed to show how her statements were

-3-

involuntary, especially falling short in providing record evidence to the trial court of involuntariness when she moved to suppress the statements.

We acknowledge that defendant gave this initial interview only a few hours after discovering the death of her toddler son. Such an event would likely be traumatic for any parent. With that said, review of the transcript of the first interview does not suggest that defendant's intellect or will was overwhelmed during that conversation. Defendant, in fact, later admitted during the second interview to having the wherewithal at the time of the first interview to hide drugs because she knew police would be coming.

Even assuming that the statements were erroneously admitted, such error was harmless given defendant's subsequent interviews and the other evidence against defendant. Defendant repeated most, if not all, of her initial statements during subsequent interviews, and she does not contest the admission of those subsequent interviews. On appeal, defendant claims that "there was essentially no evidence to contradict" her defense and that the prosecutor was able to impeach defendant's testimony at trial through the first interview. But these claims disregard the subsequent interviews that were properly admitted, used to impeach, and not challenged on appeal.

Moreover, there is nothing in the transcript of the first interview that would have overshadowed the other evidence; the average jury would not have found the prosecutor's case significantly less persuasive in the absence of that interview. See *People v Soriano*, ___ Mich ___; ___ NW3d ___ (2026) (Docket No. 167373). Therefore, there was no harmful error in regard to the admission of the initial interview.

## B. PROSECUTORIAL MISCONDUCT

Defendant also claims on appeal that the prosecutor committed prosecutorial misconduct during closing arguments and that her trial counsel was ineffective for not objecting to the alleged misconduct. Defendant failed to object to the alleged misconduct below and she does not argue that an objection would have been futile, so her claim for prosecutorial misconduct is reviewed for plain error affecting substantial rights. *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011); *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Under the plain-error rule, a clear or obvious error that affected substantial rights must have occurred, and "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings." *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) (cleaned up).

The Court finds nothing improper with the prosecutor's closing argument. The prosecutor simply commented on the credibility of defendant as a witness, which the prosecutor is able to do. See *People v Buckey*, 424 Mich 1, 14-15; 378 NW2d 432 (1985); *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997). Defendant argues that it is improper to make a statement of fact that is unsupported by the evidence, *People v Marshall*, 493 Mich 1020; 829 NW2d 876 (2013), and that a prosecutor may not "denigrat[e] a defendant with intemperate and prejudicial remarks," *People v Bahoda*, 448 Mich 261, 283; 531 NW2d 659 (1995). The only statement of fact that the prosecutor appeared to make was that 787 days had passed from the time of the victim's death until trial; whether defendant made up a story is an argument, not evidence or fact.

Furthermore, defendant fails to explain how the prosecutor's comments were somehow so intemperate and prejudicial to cross the line of propriety. A prosecutor is "free to argue the evidence and all reasonable inferences from the evidence as it relates to [the] theory of the case." *People v Gonzalez*, 178 Mich App 526, 535; 444 NW2d 228 (1989). The prosecutor was arguing inferences about defendant's credibility based on the evidence presented at trial, which is proper and not error. And because the prosecutor's argument was proper, defendant has no meritorious claim for ineffective assistance of counsel. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## C. SENTENCING

In addition to her convictions, defendant also challenges her sentence on appeal. We review a within-guidelines sentence for reasonableness and proportionality, such that the sentence must be proportionate to the seriousness of the circumstances surrounding the offense and the offender. *People v Lampe*, 327 Mich App 104, 125; 933 NW2d 314 (2019). Defendant challenges two different aspects of her sentence: generally, the wide guidelines range and specifically, the proportionality of defendant's specific sentence.

For the wide guidelines argument, defendant fails to explain or cite how "wide" guidelines should result in a vacated sentence. Furthermore, the guidelines are not mandatory and are merely advisory. See *People v Steanhouse*, 500 Mich 453, 474-475; 902 NW2d 327 (2017). Therefore, however "wide" the guidelines may be is irrelevant because they standardize the range of punishment and are just one consideration in sentencing.

The substance of defendant's argument derives from her proportionality argument; but even so, defendant's argument still fails. Defendant bears the burden of overcoming the nonbinding presumption of proportionality of a within guidelines sentence. *People v Posey*, 512 Mich 317, 359; 1 NW3d 101 (2023). Defendant does not dispute that her sentence is within the guidelines range. Rather, she argues that she did not deserve a sentence at the top of the guidelines because her history was primarily drug-related, she was seeking help for her addiction, she demonstrated a desire to reform, and "these are not the worst facts and Appellant is not the worst offender."

Defendant has failed to carry her burden that her within-guidelines sentence was not proportionate given the evidence, the trial court's reasoning, and her arguments on appeal. At sentencing, the trial court considered the offense—the death of a one-year old by fentanyl—and the offender—a defendant who was found with drugs shortly after her son's death—when sentencing defendant. Defendant has simply failed to demonstrate how such reasoning and application resulted in a disproportionate sentence. Although defendant may argue that she wants to reform, the fact that she was found with methamphetamine and heroin two months after her son's death does not support a desire for reformation.

Finally, whether defendant and her crimes should or should not be considered the "worst" on some undefined spectrum is irrelevant. A sentence near or at the top of the guidelines is not reserved solely for a singular offender and singular offense, but may instead be appropriate for a range of offenders and offenses. See *People v Milbourn*, 435 Mich 630, 654; 461 NW2d 1 (1990).

Defendant has not shown that her sentence counteracts the "effective protection against unjustified sentence disparity" that the *Milbourn* standard on proportionality sought to impose. See *id.* at 649.

## III. CONCLUSION

Defendant has not shown errors in the admission of the police interview, the prosecutor's closing argument, and sentencing. Therefore, her convictions and sentence shall be affirmed.

Affirmed.

/s/ Michael F. Gadola
/s/ Michael J. Riordan
/s/ Brock A. Swartzle